**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
AMERICAN CIVIL LIBERTIES            )
UNION, *et al.*,                    )
                                    )
                    Plaintiffs,     )
                                    )
          v.                        )          Civil Action No. 11-0933 (ABJ)
                                    )
CENTRAL INTELLIGENCE AGENCY,        )
                                    )
                    Defendant.      )
_____)

<u>**MEMORANDUM OPINION**</u>

Plaintiffs American Civil Liberties Union and American Civil Liberties Union

Foundation (collectively "ACLU") bring this action against the Central Intelligence Agency

("CIA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2009).  They seek the

release of information about unauthorized interrogation techniques from eleven reports written

by the CIA Office of the Inspector General ("OIG") that the CIA has withheld under exemptions

to the FOIA disclosure requirement.  These reports all relate to the detention, interrogation, or

treatment of individuals apprehended after September 11, 2001, and held at detention facilities

outside the United States.  Ex. A to Lutz Decl. [Dkt. # 16-3] at 3.  The parties have cross-moved

for summary judgment.  The Court will grant in part and deny in part both motions.  The Court

will remand the ACLU's challenge to withheld document number 3 to the agency for a more

thorough determination of whether any of the information in the report has already been

officially acknowledged.  But because the rest of the information in the withheld documents is

exempt from disclosure under FOIA Exemptions 1 and 3, and at least some is also exempt under

FOIA Exemption 5, the Court finds that the remaining ten documents were properly withheld in their entirety.

## BACKGROUND

The following facts are uncontested except where noted.  The basis for this action is a FOIA request that the ACLU submitted to the CIA by letter dated April 25, 2011, seeking:

> (1) All reports or conclusions of internal inquiry or investigation into the CIA's Inspector General or Office of the Inspector General . . . (2) all reports produced by the CIA OIC relating to the detention, interrogation, or treatment of individuals apprehended after September 11, 2001, and held at detention facilities outside the United States . . . .

Ex. A to Lutz Decl. at 1.  The letter requested expedited processing and a fee waiver.  *Id.* at 3–16.  The CIA timely acknowledged receipt of the request.  Ex. B to Lutz Decl.

According to a declaration submitted on behalf of the CIA by Martha M. Lutz, the Information Review Officer for the Director's Area of the CIA, the mission of CIA's OIG is "to promote economy, efficiency, effectiveness, and accountability in the management of CIA activities by performing independent audits, inspections, investigations and reviews of CIA programs and operations."  Lutz Decl. ¶¶ 1, 11.  The OIG "provid[es] findings and recommendations to the CIA and its Director, as well as Congressional intelligence committees."  *Id.* ¶ 11.  Lutz's declaration further states: "I understand that the OIG's law enforcement functions . . . include investigation of alleged violations of federal law that involve a program or operation of the CIA."  *Id.*

Having received no response to its request, the ACLU filed the initial complaint in this action on May 18, 2011.  Compl. [Dkt. # 1].  It filed an amended complaint approximately a month later.  Am. Compl. [Dkt. # 8].  The CIA responded to the ACLU's FOIA request on September 30, 2011.  Ex. C to Lutz Decl.  In response to a Minute Order issued by the Court, the

CIA later submitted a Vaughn Index to plaintiff describing the documents and information withheld, and the FOIA exemptions applicable to each withholding. Ex. E to Lutz Decl; Minute Order (October 11, 2011).

In response to the first item in the ACLU's request, the CIA produced three partially redacted versions of a memorandum titled *Review of Certain Aspects of the Operations of the Office of Inspector General* ("Deitz Memorandum"). Lutz Decl. ¶ 8. This item appears as document number 12 in the CIA's Vaughn Index. *Id.*

In response to the second item, the CIA identified twelve responsive documents. *Id.* One document was removed from this litigation by agreement of the parties. *Id.* The remaining eleven documents were withheld in their entirety. *Id.* According to the Lutz Declaration, which describes the withheld documents, all eleven responsive documents are OIG reports. *Id.* ¶ 10. Documents numbered 1, 2, 4, 5, 7, and 8 in the Vaughn Index are reports on the treatment of detainees. *Id.* ¶ 13. Documents numbered 3 and 6 are reports on the use of certain interrogation techniques at an overseas CIA detention facility, as well as the non-registration of certain detainees. *Id.* ¶ 14. And documents numbered 9, 10, and 11 are reports on overseas CIA detention facilities and CIA counterterrorism operations. *Id.* ¶ 12.

The CIA has asserted FOIA Exemptions 1, 3, 5, and 7 as the basis for its redactions and withholdings. Ex. E to Lutz Decl.

After receiving the Vaughn Index, the ACLU responded by letter, notifying the CIA that it would exclude the following categories of information from its challenge: "the identities of CIA operatives; the specific questions asked of detainees by interrogators; the responses given by detainees to those questions; and the identities of foreign governments or agents." Lutz Decl. ¶ 9; Ebadolahi Decl. [Dkt. # 19-2] ¶ 12.

The parties have now cross-moved for summary judgment.  *See* [Dkt. # 16, 19].  Pursuant to its authority to review withheld documents, the Court subsequently ordered the CIA to deliver all of the withheld documents to chambers for the Court's *in camera* review.  Minute Order (July 12, 2012), citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  The Court has reviewed all of the disputed documents.

## STANDARD OF REVIEW

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009), citing *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1953); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).  However, a plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. DOJ*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010), quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citations omitted).

In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  However, where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment [to the government] solely on the basis of information

provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.  The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## ANALYSIS

Along with the letter described above, in which the ACLU agreed to exclude certain information from this challenge, the ACLU's cross-motion for summary judgment narrows the scope of this litigation.  According to the memorandum in support of the cross-motion, the ACLU seeks the release of only "descriptions in the OIG reports of the use of unauthorized interrogation methods."  Mem. in Support of Pls.' Cross-Mot. for Summ. J. and in Opp. to Def.'s Mot. for Summ. J. ("Pls.' Mem.") at 6; *see also id.* at 4 (describing the only contested material as "the portions of the OIG reports describing the use of unauthorized techniques.").  These are activities that "both the CIA and the OIG regard as *ultra vires*."  *Id.* at 3.  Accordingly, the Court enters judgment in favor of the CIA's withholdings to the extent they are unrelated to descriptions of alleged "use of unauthorized techniques."  In addition, the ACLU has asserted that the portion of its FOIA request seeking "all reports or conclusions of an internal inquiry or investigation into the CIA's Inspector General or Office of the Inspector General" is "no longer at issue in this litigation."  *Id.* at 4 n.2.  So the Court will enter judgment in favor of the CIA regarding the three redacted copies of the Deitz Memorandum (document number 12), which were returned in response to the withdrawn portion of the ACLU's request.  *See* Lutz Decl. ¶ 8; Ex. E to Lutz Decl. at 92–93; Reply Mem. in Further Support of Def.'s Mot. for Summ. J. and in Opp. to Pls.' Cross-Mot. for Summ. J. ("Def.'s Opp.") [Dkt. # 21] at 2–3.

In support of the remainder of its withholdings, the CIA exerts FOIA Exemptions 1, 3, 5, and 7.

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Ogelsby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir 1990). The ACLU does not contest the adequacy of the CIA's search in this case. Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.C. Cir. 2005).

When an agency seeks to withhold a document from disclosure, it must specify the exemption claimed and explain why it is entitled to claim it. *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987) (internal

citations omitted).  The agency bears the burden of justifying the decision to withhold records under FOIA's statutory exemptions.  *See* 5 U.S.C. § 552(a)(4)(B).  A court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Casey*, 656 F.2d at 738.  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc.*, 926 F.2d at 1200 (internal quotation marks and citations omitted).  "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011), citing *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  Furthermore, "[i]n the national security context, . . . we must 'accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record.'" *ACLU v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012), quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

## I.    The CIA Properly Withheld all Eleven Documents under FOIA Exemption 3.

FOIA Exemption 3 authorizes the government to withhold information that is:

> Specifically exempted from disclosure by statute . . . if that statute
> (A)(i)  requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> (ii)  establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
> (B)  if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  The CIA relies on the National Security Act of 1947, 50 U.S.C. § 403-1, as amended, and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g, as amended, as specifically exempting the withheld documents from disclosure.

Section 102A(i)(1) of the National Security Act of 1947 provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 403-1(i)(1).  That statute has been recognized in this Circuit as a legitimate source for exemption under FOIA Exemption 3.  *See Larson*, 565 F.3d at 865.

Section 6 of the Central Intelligence Act of 1949 provides that the CIA "shall be responsible for protecting intelligence sources and methods from unauthorized disclosure" and "shall be exempted" from the provisions of any law that requires "the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the agency."  50 U.S.C. § 403g.  This too has been recognized in this Circuit as a legitimate source for exemption under FOIA Exemption 3.  *See e.g.*, *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980).

"Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).  The CIA argues that the information about interrogation techniques that the ACLU seeks falls within the category of "intelligence sources and methods," and "relates primarily to the CIA's ability to collect counterterrorism intelligence and perform counterterrorism operations – functions that reside at the core of the CIA's mission."  Lutz Decl. ¶ 42; *see also* Def.'s Mem. at 14.

Courts in this Circuit have found that information about interrogation techniques pertains to "intelligence methods or sources."  *See, e.g.*, *ACLU v. DOD*, 628 F.3d 612, 616–17 (D.C. Cir. 2011) (information relating to the capture, detention, and interrogation of high value detainees could be withheld as information pertaining to intelligence sources or methods); Memorandum Opinion, *ACLU v. DOJ*, No. 10-123(RMC), slip op. at 9–10 (D.D.C. Feb. 14, 2011) (information about enhanced interrogation techniques could be withheld as information pertaining to intelligence sources or methods).  And the Court's review of the documents confirms that the exemption was properly invoked.

The ACLU's only argument is that interrogation techniques cannot be properly classified as intelligence sources or methods when they are "unauthorized."  Pls.' Mem. at 11–15; Reply Mem. in Support of Pls.' Cross-Mot. for Summ. J. ("Pls.' Reply") [Dkt. # 22] at 4–14.  It provides scant support for this assertion, and there is nothing in statute or case law that requires courts to treat information about unauthorized interrogation techniques differently from information about authorized techniques.

The ACLU relies almost entirely on *CIA v. Sims*, 471 U.S. 159 (1985).  In *Sims*, the Supreme Court upheld the CIA's withholding of the names of researchers and affiliated institutions associated with a government research program designed to counter perceived Soviet and Chinese advances in brainwashing and interrogation techniques.  *Id.* at 173.  The Court found that regardless of whether the individuals had been promised confidentiality, they qualified as "intelligence sources" for purposes of FOIA Exemption 3.  *Id.* at 173–74, 181.  In the analysis leading to its conclusion, the Court noted that "[t]he plain meaning of § 102(d)(3) [of the National Security Act] may not be squared with any limiting definition that goes beyond the requirement that the information fall within the Agency's mandate to conduct foreign

intelligence." *Id.* at 169 (internal quotation marks omitted).  The ACLU construes this sentence as an indication that information about unauthorized interrogation techniques should be excluded from FOIA Exemption 3 because "the phrase 'intelligence sources and methods' – though broad – does not encompass conduct that falls outside of the CIA's mandate."  Pls.' Reply at 6.

But, *Sims* does not stand for that broad proposition.  As long as the withheld information pertains to methods of collection that the agency used to perform its "statutory duties with respect to foreign intelligence," it is irrelevant whether the actual techniques were authorized. *Sims*, 471 U.S. at 169–70.

The D.C. Circuit confronted this issue in *ACLU v. Department of Defense*, 628 F.3d 612 (D.C. Cir. 2011).  Rejecting the argument that *Sims* excludes from Exemption 3 information about specific CIA intelligence-gathering techniques that are now considered unauthorized, the D.C. Circuit held that information about interrogation techniques may be classified, regardless of whether use of the particular techniques exceeded the CIA's legal authority.  *See id.* at 622.  The court found that "[t]o the extent that the ACLU's claim rests on the ACLU's belief that the enhanced interrogation techniques were illegal, there is no legal support for the conclusion that illegal activities cannot produce classified documents."  *Id.*

Citing the *ACLU v. Department of Defense* decision, at least one court in this district has subsequently found that "the illegality of information is immaterial to the classification of such information."  *ACLU v. DOJ*, at 9.  In that case, ACLU sought in part the disclosure of information concerning "the 'actual and potential implementation' of 'enhanced interrogation techniques,' including 'conditions of confinement' that functioned as part of the 'enhanced interrogation techniques.'"  *Id.* at 3 (internal citation omitted).  The court rejected the plaintiff's argument that the illegality of the interrogation techniques rendered the information outside the

protection of "intelligence sources and methods" as contemplated by the National Security Act of 1947 and the Central Intelligence Agency Act of 1949.  *Id.* at 9; *see also ACLU v. DOJ*, 681 F.3d 61, 75 (2d Cir. 2012), citing *CIA v. Sims*, 471 U.S. at 169 ("[W]e reject Plaintiffs' argument that the Government could not withhold information relating to waterboarding on the grounds that waterboarding is now 'illegal' and therefore beyond the CIA's mandate."); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 505 (S.D.N.Y. 2010) ("[B]ecause the records at issue fall under the coverage of Exemption 3, the CIA is permitted to withhold their disclosure regardless of the alleged illegality of the practices contained therein."); *Navasky v. CIA*, 499 F. Supp. 269, 274 (SDNY 1980) ("I find that a claim of activities ultra vires the CIA charter is irrelevant to an exemption 3 claim.").

The ACLU attempts to distinguish this case by asserting that the techniques at issue here are not merely illegal, but were unauthorized at the time they were used.  Pls.' Mem. at 2–3, 11–15; Pls.' Reply at 4–14.  According to the ACLU, "[i]llegal but authorized activities include, for example, the use of waterboarding, which contravenes the prohibition on torture, but which senior government officials authorized CIA interrogators to use. . . .  Unauthorized activities, by contrast, were *never* approved or condoned by the CIA or any other government entity." [1]  Pls.' Reply at 7 (internal citations omitted).  Based on that definition, it draws the conclusion that

_____

[1]    There appears to be some dispute over whether the CIA has confirmed that the withheld documents contain information about unauthorized interrogation methods.  The CIA asserts that it "need not confirm or deny whether any of the withheld reports concern unauthorized interrogation methods."  Reply Mem. in Further Support of Def.'s Mot. for Summ. J. [Dkt. # 20] at 1.  The ACLU counters that the CIA "has already acknowledged, in previous disclosures, that its interrogators engaged in conduct that neither the Agency nor the OIG regarded as authorized."  Pls.' Reply at 4, citing *Special Review*, Ex. A to Pl.'s Mem. at 41–42 & n.46.  The Court need not resolve what the CIA has or has not acknowledged with respect to the matters that are the subjects of the eleven reports because the Court rules that even if some of the conduct described in one or more of the reports has been deemed to be unauthorized, that does not require the release of the documents.

unauthorized conduct cannot be within the CIA's mandate, and therefore falls outside the definition of "intelligence methods and sources" under *Sims*.

But this argument misconstrues *Sims* just the way that the D.C. Circuit rejected in *ACLU v. Department of Defense*.   The D.C. Circuit found that under *Sims*, what matters is that the activity was conducted for intelligence purposes, not that it was illegal or unauthorized.

None of the other cases that the ACLU cites support its interpretation either.   In *Weissman v. CIA*, the D.C. Circuit required the CIA to disclose information about a CIA investigation into an American citizen residing in the United States.   565 F.2d 692, 696, 698 (D.C. Cir. 1977).   The court found that the CIA's intelligence gathering mandate was limited to intelligence gathering abroad.   *Id.* at 695–96.   Since the CIA had no authority to conduct security investigations of American citizens, the court held that the information was not protected as an intelligence source or method.   *Id.* at 696.   According to the Court, the withheld information was not "intelligence" information, within the meaning of the applicable statute.   *Id.*   In *Navasky v. CIA*, 499 F. Supp. 269, 274 (S.D.N.Y. 1980), a court in the Southern District of New York similarly found that the information at issue –  authors and publishers of books used for foreign propaganda, as well as the books themselves – was not "intelligence," and ordered disclosure on that basis.   In the instant case, the ACLU cannot, and does not, make the parallel argument that the interrogation of foreign prisoners does not constitute an intelligence method.   Indeed, as described above, numerous courts – including the D.C. Circuit – have squarely found that it does.   So *Weissman* and *Navasky* are inapposite.

Furthermore, the *Navasky* court actually found that whether the activities about which the plaintiff was seeking information were "*ultra vires* the CIA charter" was immaterial to the determination of whether they fell under "intelligence sources or methods."   *Navasky*, 499 F.

Supp. at 273–74 (italicization added).  The court thereby rejected the premise that unauthorized conduct cannot be within the CIA's mandate – just the theory that the ACLU asks the Court to adopt here.  And there is no authority for the Court to treat the conduct at issue here any differently merely because the CIA has admitted that the conduct was unauthorized.

Accordingly, since the CIA has proffered sufficient evidence to show that the withheld information pertains to methods that the agency used to collect foreign intelligence, the Court finds that it was properly withheld under FOIA Exemption 3.

## II.    The CIA properly Withheld all Eleven Documents under FOIA Exemption 1.

A showing that information satisfies any one FOIA exemption is sufficient to justify withholding.  Therefore, since the Court has already found that the government satisfies Exemption 3, it need not move on to assess whether the government has satisfied Exemptions 1, 5, or 7.  *See Assassination Archives and Research Ctr. v. CIA*, 334 F.3d 55, 58 n.3 (D.C. Cir. 2003) ("Because we conclude that the Agency easily establishes that the records [sought] are exempt from disclosure under Exemption 3, we do not consider the applicability of Exemption 1).  Nonetheless, even if the CIA did not invoke Exemption 3, it would have been justified in withholding the contested information under Exemption 1.

Exemption 1 protects records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The CIA invokes Executive Order No. 13526, "Classified National Security Information."  Under Section 1.1(a) of that order, information may be classified if:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;

13

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009). The categories under section 1.4 of Executive Order No. 13526 include information that pertains to "intelligence activities (including covert action), intelligence sources or methods."[2] 75 Fed. Reg. at 707.

There is no dispute that the government satisfies the first two prongs of this analysis. Pls.' Mem. at 10; *see also* Lutz Decl. ¶¶ 20–21 (an original classification authority classified the information), ¶ 22 (the information is owned by, was produced by, and is under the control of the United States Government). The disputes arise over the second two prongs: (1) whether the withheld information pertains to intelligence activities, methods, or sources, and (2) whether disclosure of the information could reasonably be expected to result in damage to the national security. Pls.' Mem. at 10.

As to the first question, courts routinely analyze the "intelligence sources or methods" language under Exemptions 1 and 3 in the same manner. *See, e.g.*, *Casey*, 656 F.2d at 736–37

---

2       As explained above, the only withholdings challenged here are the withholdings of information about unauthorized interrogation techniques. According to the Lutz Declaration, the section 1.4 category that this information falls under is for information pertaining to intelligence activities, sources, and methods. Lutz Decl. ¶¶ 29–36. Other withheld information was classified under a different category of section 1.4 that includes information pertaining to foreign relations or foreign activities of the United States. Lutz Decl. ¶ 37–39 (discussing "information concerning the specific assistance of foreign countries to the CIA's counterterrorism operations" and "the relationships that the United States maintains with the intelligence and security services of foreign countries"). By the ACLU's concession, however, those withholdings are no longer contested. Pls.' Mem. at 4 n.2.

n.39; *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976).  So for the reasons explained above, the Court finds that the government has satisfied this prong of the analysis.

The government has also made a satisfactory showing as to the second question:  whether disclosure could reasonably be expected to result in damage to the national security.  "In the FOIA context, [the D.C. Circuit has] consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *ACLU v. DOD*, 628 F.3d at 624, citing *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) (internal quotation marks omitted).  Accordingly, the government's burden is "a light one."  *Id.*  The government's justifications must only be plausible and logical.  *Id.*

According to the Lutz declaration, disclosure of the existence of particular intelligence collection activities "would reveal U.S. intelligence needs, priorities, and capabilities to a foreign intelligence service or hostile organization seeking to take advantage of any national security weaknesses."  Lutz Decl. ¶ 30.  This would harm national security because "foreign government services and hostile organizations would be put on notice that their activities and information had been targeted by the CIA; future intelligence collection activities would be made more difficult; and, as a result, the conduct of such operations would become even more dangerous."  *Id.* Although Lutz affirms that the former program has been discontinued, she asserts that disclosure of the details of the former program would "likely undermine" the CIA's ability to obtain the cooperation of foreign governments and its use of effective intelligence elicitation techniques – both of which are necessary for an effective intelligence program.  *Id.* ¶ 34.  This "reasonably could be expected to result in exceptionally grave damage to the national security."  *Id.*  Finally, Lutz asserts that foreign terrorist organizations and foreign governments train in counter-interrogation methods.  *Id.* ¶ 35.  Accordingly:

> Public disclosure of the questioning procedures and methods, beyond the questions themselves, would allow terrorist organizations to more effectively train to resist such techniques, which would result in degradation in the effectiveness of the techniques in the future. If detainees in U.S. Government custody are more fully prepared to resist interrogation, it could prevent the U.S. Government from obtaining vital intelligence that could disrupt future attacks targeting U.S. persons and property.

*Id.*

The ACLU argues that disclosure of information about the use of unauthorized interrogation techniques would not have these national security implications. But given the CIA's expertise in matters of national security, *see Halperin*, 629 F.2d at 148, the Court finds that its justifications are both plausible and logical. Although aspects of the techniques in question may not have been authorized at the time of their use, the Court cannot find it unreasonable for the government to believe that disclosure of information about their use would reveal details about interrogation methods that could assist foreign terrorist organizations and foreign governments, and thereby damage national security. "[A]ny affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *ACLU v. DOD*, 628 F.3d at 619, quoting *Wolf*, 473 F.3d at 374 (internal quotation marks omitted). Moreover, the ACLU has not presented any evidence that this justification is mere pretext or made in bad faith. *See SafeCard Servs.*, 926 F.2d at 1200.

The ACLU makes a final argument that disclosure cannot reasonably be found to harm the national security because the withheld information has already been released by the DOJ. Pls.' Mem. at 16; Pls.' Reply at 14–16. The ACLU cites information from a document entitled *Special Review: Counterterrorism Detention and Interrogation Activities (September 2001– October 2003)* ("*Special Review*"), that it claims the government released in partially redacted

form in connection with a separate FOIA lawsuit.  Pls.' Mem. at 2.  *See generally* Ex. A to Pl.'s Mem.

To the extent the ACLU is making the argument that it is unreasonable to believe that disclosure of the withheld information would cause any new damage to the national security because any potential damage would have already been caused by the information that is already in the public domain, this argument is refuted by the Lutz Declaration.  Lutz asserts that the withheld documents contain detailed information that is not in the public domain.  Lutz Decl. ¶ 33.  Moreover, the disclosure of that information "could be expected to result in exceptionally grave damage to the national security."  *Id* ¶ 34.  Even if this new information seems innocuous given what is already publicly available, "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself."  *Larson*, 565 F.3d at 864 (internal quotation marks and alterations omitted); *see also ACLU v. DOJ*, 681 F.3d at 71 (finding redacted information in a report by the Office of the Legal Counsel analyzing legal questions about the CIA's use of enhanced interrogation techniques could reasonably compromise national security even though the government had already disclosed detailed information about its discontinued detention and interrogation program).

Accordingly, the Court finds that the CIA appropriately withheld any information about unauthorized interrogation techniques under FOIA Exemption 1.

### III.   The CIA Must Disclose Information that Has Already Been Officially Acknowledged by the Government.

To the extent the ACLU is arguing that the CIA should have released information contained in the withheld documents that has already been officially disclosed by the

government, the Court engages in a separate analysis.  Courts can compel disclosure when the information has been "officially acknowledged."  *See Wolf*, 473 F.3d at 378; *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  But this requires that the information requested:  (1) be as specific as the information previously released; (2) match the information previously disclosed; and (3) already have been made public through an official and documented disclosure.  *Wolf*, 473 F.3d at 378; *Fitzgibbon*, 911 F.2d at 765.

The Lutz declaration expressly states that in making her determination about national security impacts, Lutz took into account prior disclosures about the existence of the CIA detention and interrogation program made by former President George W. Bush and the declassification of certain details of the program by President Barack Obama.  Lutz Decl. ¶¶ 32–33.  The declaration explains that many details of the intelligence activities undertaken in support of this program remain classified.  *Id.* ¶ 33.  This includes the interrogation techniques utilized on particular detainees (as opposed to the more general information released to date), and "the CIA's intelligence requirements, priorities, and other CIA intelligence activities, sources, and methods related to the detention program."  *Id.*

Based on this explanation and the Court's *in camera review* of the documents, the Court finds that the specific information found in documents numbered 1–2 and 4–11 does not match the broad information from the *Special Review* that was already disclosed.  However, the Court will remand the ACLU's challenge to document number 3 to the CIA with the direction that the CIA review the document more closely and release any information that matches information previously disclosed in the *Special Review*.

IV.     **The CIA Properly Withheld portions of the Eleven OIG Reports under FOIA Exemption 5.**

FOIA Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  A document properly withheld under Exemption 5 "must thus satisfy two conditions:  its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  The threshold requirement under Exemption 5 is that the records in question qualify as inter-agency or intra-agency memoranda.  5 U.S.C. § 552(b)(5).  It is uncontested that the withholdings are intra-agency memoranda in accordance with this threshold requirement.  *See* Lutz Decl. ¶ 46.

If the threshold requirement is met, the agency bears the burden of showing through its declarations and *Vaughn* Index that the information withheld falls under one of three privileges: (1) the attorney-client privilege; (2) the attorney work-product privilege; or (3) the executive deliberative process privilege.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  Here, the CIA claims that the documents withheld under Exemption 5 fall within the deliberative process privilege.[3]  Lutz Decl. ¶¶ 45–49; Def.'s Mem. at 15–18; Def.'s Opp. at 12–13.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion

---

3       The CIA also invoked the attorney-client privilege over the Deitz Memorandum (Document number 12), but as discussed above, the Deitz Memorandum is no longer at issue.

among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (internal quotation marks and citations omitted). "[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents [at] issue in the course of that process." *Coastal States*, 617 F.2d at 868. Moreover, the deliberative process privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Based on the agency declarations and its *in camera* review of the documents withheld or redacted under Exemption 5, the Court is satisfied that at least portions of the records at issue were both predecisional and deliberative.

### A. The information sought is predecisional.

A document is predecisional if it was "generated before the adoption of an agency policy . . . [and] would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States*, 617 F.2d at 866. A document can be characterized as predecisional if it "is recommendatory in nature or is a draft of what will become a final document." *Id.*

Although agencies do not have to go as far as "identify[ing] a specific decision corresponding to each communication" in order to demonstrate the predecisional nature of withheld records, "protection under Exemption 5 [requires at the least that] the document was generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).

In support of application of the deliberative process privilege, the Lutz declaration gives a general description of OIG reports, of which the eleven withheld documents are examples. "Generally, each report contains a section on investigative findings, as well as sections containing conclusions and recommendations. OIG refers its findings, conclusions and

recommendations to CIA management, typically heads of independent offices and operating officials, who in turn determine whether to take any administrative action on those findings, conclusions and recommendations."  Lutz Decl. ¶ 46.

Specific to the withheld documents, Lutz asserts that the "information withheld under this privilege include:  suggested solutions to identified issues involved in the detention and interrogation of detainees; evaluations and conclusions on the laws governing registration of detainees; findings and conclusions on the circumstances surrounding treatment of certain detainees; and recommendations on the scope of CIA counterterrorism activities."  *Id.*

In addition, the Vaughn Index indicates that all of the withheld documents are reports containing findings, conclusions, and recommendations.  Ex. E to Lutz Decl.  It also asserts that all of the documents "contain[] information relating to intra-agency predecisional deliberations, including preliminary evaluations, opinions, and recommendations of CIA officers."  *Id.*  The descriptions of documents numbered 1–8 indicate that the reports concern investigations into various allegations, events, or activities.  *Id.*  Document number 9 "concern[s] overseas CIA detention facilities," and documents numbered 10 and 11 "evaluate[] CIA counterterrorism operations."  *Id.*

From this account, and its own *in camera* review, the Court is sufficiently persuaded that the information withheld is predecisional.  Each of the documents reports on the findings of some investigation or analysis, and contains evaluations, opinions, and recommendations from one set of CIA officers to another.  Even though Lutz does not pinpoint any particular decision or policy that the reports contributed to, she does indicate that they were part of an intra-agency evaluation process, and that they were used to determine whether or not the agency should take some administrative action.  Lutz Decl. ¶ 46; Ex. E to Lutz Decl.  And the record before the

Court does not merely explain that the CIA has the authority to recommend administrative actions, as the ACLU contends, it actually indicates that these particular documents were drafted for that purpose.   *See* Ex. E to Lutz Decl.

### B.   At least portions of the information sought is deliberative.

A document is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.   "Recommendations, draft documents, proposals, suggestion, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" all qualify as deliberative.   *Id.*   "[F]actual material must be disclosed but advice and recommendations may be withheld."   *Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (citations omitted).

The ACLU argues that the CIA improperly applied Exemption 5 to what it believes may be segregable factual material.   Pls.' Mem. at 25–26.   Even if a matter is exempt from FOIA disclosure, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."   5 U.S.C. § 552(b).   Any non-exempt portions of a record must be disclosed "unless they are inextricably intertwined with exempt portions."   *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).   "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."   *Id.* With the segregability analysis, as with the exemption analyses, the Court affords government affidavits a rebuttable presumption of good faith, and may rely on those affidavits so long as they show "with reasonable specificity" why withheld information cannot be further segregated. *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

The only support that ACLU provides for its argument comes from unsubstantiated guesses about the structure of the documents.   For example, the ACLU asserts:

> [O]ne would expect that each OIG report . . . begins with a discussion of the steps taken to investigate a particular matter and includes the factual findings of that investigation, before offering any opinions or recommendations, and that these segments of each report could easily be released without revealing other portions that might validly be subject to an exemption.

Pls.' Mem. at 26.

The CIA counters that "[n]one of the withheld information is 'purely factual.'"   Def.'s Opp. at 13 (internal citation omitted).   But it does not cite any evidence in support of that assertion.   *Id.*   The CIA also contends that the way in which the factual material contained in the deliberative portions of the reports was "identified, extracted, and highlighted out of other potentially relevant facts and background materials by the authors, in the exercise of their judgment" renders the factual material deliberative in its own right.   *Id.*, citing Lutz Decl. ¶ 45 (internal quotation marks omitted).   However, in support of that contention, it cites a portion of the Lutz Declaration that merely summarizes the declarant's understanding of the law.   Lutz Decl. ¶ 45 ("The [deliberative process] privilege also protects factual information contained in deliberative communications to the extent that the particular facts contained in the communications were identified, extracted, and highlighted out of other potentially relevant facts and background materials by the authors, in the exercise of their judgment.").   The declarant says nothing about the way that the facts were compiled in this case.

Based on the Lutz Declaration and the Court's *in camera* review, the Court finds that the withheld documents are deliberative reports recommending certain actions.   To the extent there are certain limited purely factual portions in one or more of them, the Court need not determine whether they are non-deliberative or segregable because it has already found that they are

covered by Exemptions 1 and 3.  However, the Court did analyze those portions of the documents to determine whether the facts had been officially acknowledged by the government when it released the redacted version of the *Special Review*.  As described above, it found that only document number 3 requires a more detailed review by the agency for purposes of complying with its obligations.

### V.    The Court need not reach the applicability of FOIA Exemption 7.

The CIA also asserts FOIA Exemption 7 over certain of its withholdings.  Subsections (c), (d), and (f) of FOIA Exemption 7 authorize the withholding of "law enforcement investigations" when disclosure could reasonably be expected to "constitute an unwarranted invasion of personal privacy," "disclose the identity of a confidential source," or "endanger the life or physical safety of an individual."  5 U.S.C. § 552(b)(7)(c)–(d), (f).  The Lutz Declaration explains that certain withholdings are justified under subsections (c) and (f) because they contain the names of CIA officers who were interviewed as part of the OIG investigation, Lutz Decl. ¶ 52, and that other withholdings are justified under subsection (d) because they contain information about confidential sources, Lutz Decl. ¶ 53.[4]  However, since the ACLU has specifically stated that it is not challenging the exclusion of the identities of CIA operatives, *see* Pls.' Mem. at 5, and that the only challenged withholdings are "the portions of the OIG reports describing the use of unauthorized techniques," Pls.' Mem. at 4, it is unclear to the Court whether content that remains contested even contains the names of CIA officers or information about confidential sources.  Defendant's papers shed no light on the answer to that question.

---

4       In its motion to for summary judgment, the CIA also invoked FOIA Exemption 7(a) in support of withholding documents numbered 7 and 8.   Def.'s Mem. at 21–22; Lutz Decl. ¶ 51.  However, on September 10, 2012, the CIA submitted a notice to the Court withdrawing that argument.  Notice to the Court [Dkt. # 25] at 2.  In light of that notice, the Court will not address Exemption 7(a).

This is critical because the Court has no authority to decide issues that are not before it. *See Allen v. Wright*, 468 U.S. 737, 750 (1984), citing U.S. Const. art. III. However, that issue need not be resolved since the Court has already found that the government was justified in withholding all of the contested information under Exemptions 1 and 3. Therefore, the Court need not determine whether Exemption 7 also applies. *See Assassination Archives and Research Ctr.*, 334 F.3d at 58 n.3.

## CONCLUSION

Accordingly, the CIA's motion for summary judgment [Dkt. # 16] and the ACLU's cross-motion for summary judgment [Dkt. # 19] will both be granted in part and denied in part. The ACLU's challenge to document number 3 in the Vaughn Index will be remanded to the CIA for the agency to more closely review the document and release any information that matches information previously disclosed in the *Special Review*.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 25, 2012